UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES,<br><br>           Plaintiff,<br><br>    v.<br><br>ADAM PACHECO,<br><br>           Defendant. | Case No. 19-cr-00248-RFB-DJA<br><br>**ORDER** |

### I.  INTRODUCTION

Before the Court is Defendant Adam Pacheco's Motion for Competency Hearing (ECF No. 181). The Court grants that motion *nunc pro tunc* and hereby issues its finding as to Mr. Pacheco's incompetence to proceed to trial. For the reasons stated below, the Court finds that Adam Pacheco is incompetent to stand trial on federal criminal charges and commits Adam Pacheco to the custody of the Attorney General based on this finding.

### II.  BACKGROUND

Defendant Adam Pacheco and his co-defendant, Harolyn Landau, were charged by indictment on October 1, 2019 with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349; six counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2; one count of conspiracy to money launder in violation of 18 U.S.C. § 1956(h); five counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and 2; and one count of conspiracy to structure in violation of 31 U.S.C. § 5324(a)(1) & (d)(1). ECF No. 1.

On September 16, 2022, Harolyn Landau entered into a plea agreement with the Government, pleading guilty to Count 1. See ECF No. 93. On March 8, 2023, the Government

filed a superseding indictment against Adam Pacheco only. ECF No. 108. The superseding indictment does not alter the original charges. It does, however, expand the period of the conspiracy by an additional six years—covering the years 2000-2019.[1]

On March 31, 2023, Mr. Pacheco filed a motion to dismiss the superseding indictment. ECF No. 117. The motion was based on Pacheco's claims under the Sixth Amendment Right to a Speedy Trial, Fifth Amendment Due Process, and the Court's Supervisory Powers. On April 30, 2023 and May 4, 2023, the Court held an evidentiary hearing on the motions. On January 12, 2023, the Court held a calendar call, where it denied as moot the Government's motion to compel reciprocal discovery (ECF No. 116). ECF No. 180.

Defendant's counsel has represented Mr. Pacheco since March 4, 2020. Counsel states that her concerns regarding Mr. Pacheco's competency have grown over the course of her representation and have continued to increase as the trial date approached. As a result, Defendant's counsel hired an independent examiner, Dr. Richard Frederick, PhD to conduct a competency evaluation of Mr. Pacheco. Dr. Frederick completed his examination on January 15, 2024. Defendant's counsel filed a motion for competency hearing on January 16, 2024. ECF No. 181. The motion was fully briefed on January 23, 2024. The Court held a competency hearing on March 25, 2024 where it heard testimony from Defendant's expert and heard oral argument regarding Defendant's competency. On March 27, 2024, Defendant's counsel filed a supplement to her motion for a competency hearing, which provides additional information regarding the selection of a suitable facility for competency restoration and assessment. ECF No. 199. Mr. Pacheco's criminal trial is currently set for May 20, 2024. This Order follows.

### III.   LEGAL STANDARD

The Due Process Clause of the Fifth Amendment prohibits trying a defendant who is mentally incompetent. Cooper v. Oklahoma, 517 U.S. 348, 354 (1996); Pate v. Robinson, 383 U.S. 375, 378 (1966). "A person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in

---

[1] The initial time period for the conspiracy spanned from 2005 to 2018. ECF No. 1.

- 2 -

preparing his defense may not be subjected to a trial." Drope v. Missouri, 420 U.S. 162, 171 (1975).

18 U.S.C. § 4241(d) "establishes a two-part disjunctive test of competency: If . . . the [district] court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable [1] to understand the nature and consequences of the proceedings against him or [2] to assist properly in his defense, the court shall [declare the defendant incompetent and] commit [him or her] to the custody of the Attorney General." United States v. Friedman, 366 F.3d 975, 980 (9th Cir. 2004).

Factors relevant to the defendant's competence include his "demeanor at trial," "any evidence of [his] irrational behavior," and "any prior medical opinion on [his] competence to stand trial." Sully v. Ayers, 725 F.3d 1057, 1070 (9th Cir. 2013).

### IV. FACTUAL FINDINGS

The Court makes the following factual findings based on the testimony presented at the hearing and the exhibits received into evidence.

On January 15, 2023, Dr. Frederick conducted a four-to-five-hour in-person interview of Mr. Pacheco, with a break for lunch. During the first part of Dr. Frederick's evaluation, he observed Mr. Pacheco's attorney and paralegal discuss Mr. Pacheco's criminal case with him, including the evidence and plea offers, and evaluated Mr. Pacheco's responses. Then Dr. Frederick conducted a private interview with Mr. Pacheco and also asked him to complete a psychological questionnaire, the Minnesota Multiphasic Personality Inventory—3rd Edition ("MMPI-3"). The MMPI-3 is a self-report instrument that is effective at evaluating the credibility of the responses provided. Mr. Pacheco responded in an open and forthcoming manner and there was no evidence of over-reporting or exaggeration. Mr. Pacheco denied any personal history of mental illness.

Dr. Frederick submitted his evaluation on January 16, 2024. The testimony of Dr. Frederick, a forensic psychologist with over 35 years of experience, is both credible and persuasive.

Mr. Pacheco is presently suffering from Delusional Disorder, grandiose and persecutory

type. Specifically, Mr. Pacheco presents with an "irrational insistence that he has important contacts at the top levels of government, that these contacts are favorably disposed to assist him in his legal matters, and that he has led the development and creation of scientific and technological inventions that far surpass his educational and technical capacity." These government contacts include people such as former President Obama, Attorney General Merrick Garland, former Attorney General William Barr, and First Lady Jill Biden. Mr. Pacheco holds these beliefs "with great intensity and preoccupation" and "the irrational thought processes that permit him to hold these fixed false beliefs have suffused his thinking about his legal matters to the extent that he is incapable of rationally participating in his defense."

Although Mr. Pacheco can articulate the charges against him, Mr. Pacheco's Delusional Disorder, specifically the irrational thought processes that support the delusions, prevent him from understanding the nature and consequences of the proceedings against him and assisting properly in his defense. Such irrational thought processes directly impinge on Mr. Pacheco's representation by his Counsel in this matter as he is incapable of conducting a rational risk evaluation of his circumstances or to properly consider and present defenses to anticipated government evidence and prosecutorial arguments. His present Delusional Disorder also renders him unable to rationally evaluate the evidence and the impact of that evidence at his trial. Mr. Pacheco's beliefs go beyond typical defendant behavior, such as arguing against the evidence or refusing to make a deal in order to protect their interests.

Mr. Pacheco had slept for only a few hours the night before his examination. However, sleep deprivation of that nature is unlikely to cause Delusional Disorder and the Court finds no basis for finding it has played a role in Mr. Pacheco's mental health issues. Delusional Disorder can and does arise from extremely stressful situations like the one Mr. Pacheco faces as he awaits his criminal trial.

V. DISCUSSION

a. Competency Findings

Based on the factual findings, the Court finds that Mr. Pacheco is unable to fully understand the consequences of his charges and to assist properly in his defense and is therefore incompetent

to stand trial under Section 4241(d).

As noted, the Court finds the testimony of Dr. Frederick, a forensic psychologist with over 35 years of experience, to be credible and persuasive. The Court also concludes, based on its factual findings and the MMPI-3 results, that Mr. Pacheco was truthful in his responses during his examination with Dr. Frederick.

The Court agrees with the opinion of Dr. Frederick that Mr. Pacheco's irrational thought process and delusions bear directly on his ability to understand the consequences of his charges and to assist in his defense. Specifically, the Court finds that Mr. Pacheco's fixed false beliefs that people at the highest level of government, such as the former President, current First Lady, and current Attorney General, will aid him in this very criminal matter renders him unable to rationally understand and evaluate his case. An individual cannot fully or rationally understand his charges and participate in his defense if he unwaveringly believes that nonexistent evidence in the form of presidential and prosecutorial intervention or influence will legally and factually counter the actual charges against him. The Court is thoroughly persuaded by credible evidence by the requisite standard that Mr. Pacheco holds such irrational beliefs as a function of delusions. For this reason, the Court further finds that Mr. Pacheco presently lacks the ability to consult with his lawyer with a reasonable degree of rational understanding. See Dusky v. United States, 362 U.S. 402, 402 (1960).

The Court notes that there are two expert opinions regarding Mr. Pacheco's competence: a 2023 opinion from Dr. Kuhl and the 2024 opinion and testimony from Dr. Frederick. Although Dr. Kuhl and Dr. Frederick reached different conclusions, the Court does not find Dr. Kuhl's opinion to be more credible than that of Dr. Frederick for a few reasons. First, the depth and breadth of the respective examinations differed—with Dr. Frederick conducting a more extensive evaluation. Second, Dr. Frederick's examination occurred more recently. Third, the Court was in a position to (and did) evaluate the credibility of Dr. Frederick based upon live and in-person testimony with questioning by the parties and the Court.  The Government also did not offer its own expert including Dr. Kuhl, despite an opportunity to do so. The Court was thus presented with compelling and credible expert evidence with no countervailing credible or compelling expert

evidence.

The Court rejects the Government's sole focus on Mr. Pacheco's understanding of the nature of the charges as the primary basis for determining his competency under the law. Although Mr. Pacheco can articulate the charges against him, the test for competency is disjunctive. <u>United States v. Friedman</u>, 366 F.3d 975, 980 (9th Cir. 2004). Therefore, while Mr. Pacheco may possess a factual understanding of the nature of the charges, the Court finds that his Delusional Disorder affects his rational understanding of his case and therefore impedes his ability to effectively understand the consequence of the charges and to assist counsel. See <u>Drope v. Missouri</u>, 420 U.S. 162, 171 (1975); <u>Dusky</u>, 362 U.S. at 402.

Based on the expert report, the testimony and evidence presented at the competency hearing, and the factual findings as articulated above, the Court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is not able to assist properly in his defense and therefore stand trial, pursuant to Section 4241(d). See <u>Friedman</u>, 366 F.3d at 980.

### b. Commitment to the Attorney General

Because the Court finds that Defendant is presently incompetent to stand trial, the Court must commit Defendant to the custody of the Attorney General. See 18 U.S.C. § 4241(d). The Attorney General must then place Defendant in a suitable facility for treatment for a reasonable period of time, not to exceed four months, to determine whether there is a substantial probability that in the foreseeable future, Defendant will attain the capacity to permit the trial to proceed. See 18 U.S.C. § 4241(d). This commitment to the custody of the Attorney General for treatment is mandatory. See <u>United States v. Strong</u>, 489 F.3d 1055, 1063 (9th Cir. 2007). District courts have no discretion to order where the competency restoration and assessment takes place. <u>United States v. Quintero</u>, 995 F.3d 1044, 1050 (9th Cir. 2021).

Acknowledging this, Counsel for Mr. Pacheco nonetheless submits that the Court may examine all the statute's provisions with the rule of lenity in mind and can *recommend* that the Attorney General designate Mr. Pacheco to a medical facility for patients who pose a low risk of flight or danger. Mr. Pacheco's attorney further asks for permission to recommend a specific

facility to the Court after consultation with Mr. Pacheco.

However, "the rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." United States v. Santos, 553 U.S. 507, 514 (2008). And the Ninth Circuit found the "language of the statute is unambiguous" in that it clearly commits the choice of "suitable facility" to the Attorney General; not the court. Quintero, 995 F.3d at 1050 ("The district court's responsibility is to make the appropriate determination that the defendant is mentally incompetent. The court has no role in determining the 'suitable facility.'"). Accordingly, the Court finds that it has no authority to either order or recommend the "suitable facility" for Mr. Pacheco.

The Court notes that Mr. Pacheco has been on pretrial release for nearly four and a half years—since October 7, 2019. During this time, he has never violated a condition of his pretrial release. The Court further notes that the Attorney General is required to make an individualized assessment when determining the facility and must select a facility that is "suitable to provide care or treatment given the nature of the offense and the characteristics of the defendant." 18 U.S.C. § 4247(a)(2); Quintero, 995 F.3d at 1054 (there is "no impediment in the statute to the Attorney General—in his discretion, not ours—choosing outpatient treatment as the 'suitable facility.'") (quoting 18 U.S.C. § 4241(d)).

### VI.   CONCLUSION

**IT IS THEREFORE ORDERED** that Mr. Pacheco is committed to the custody of the Attorney General on a date certain upon confirmation from the Attorney General or the Government of the suitable facility where Mr. Pacheco is to receive competency restoration and assessment. The Government or Attorney General shall promptly file a notice advising Mr. Pacheco and the Court of the facility to which Mr. Pacheco has been designated for treatment once such facility has been determined.

**IT IS FURTHER ORDERED** that the Attorney General shall hospitalize the defendant for treatment in a suitable facility for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and for an additional reasonable

period of time until his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or the pending charges against him are disposed of according to law; whichever is earlier.

**IT IS FURTHER ORDERED** that upon Mr. Pacheco's hospitalization, the Government **SHALL SUBMIT** regular reports to the Court regarding the status of Mr. Pacheco's competency restoration at thirty-day intervals.

**IT IS FURTHER ORDERED** that the period from the date of this order until the determination and disposition of Mr. Pacheco's mental capacity as outlined in 18 U.S.C. § 4241(d) shall constitute excludable delay under the Speedy Trial Act, 18 U.S.C. § 3161(h)(1)(A), (h)(1)(F), and (h)(4).

**DATED:** May 3, 2024

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**